**THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Michael R. Camacho, <br><br>            Plaintiff, <br><br>    vs. <br><br> CareerBuilder, LLC, <br><br>            Defendant. | Case No. 08-cv-448 <br><br> Judge Zagel <br><br> Magistrate Judge Schenkier |

## DEFENDANT CAREERBUILDER, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

Defendant CareerBuilder, LLC ("CareerBuilder"), pursuant to Rules 8 and 12 of the

Federal Rules of Civil Procedure, files this Answer and Affirmative Defenses to the Complaint

filed by Plaintiff Michael R. Camacho and in support states as follows:

**Nature of the Case:**

1.  Staff Sergeant Michael R. Camacho, United States Marine Corps Reserve, sues
    CareerBuilder, LLC ("CareerBuilder") for discriminating against, retaliating against,
    and constructively discharging him in violation of the Uniformed Services
    Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.*

**ANSWER:**    CareerBuilder admits that Plaintiff purports to bring this lawsuit under the

Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §

4301 *et seq.*  CareerBuilder denies that it discriminated against, retaliated against, and

constructively discharged Plaintiff in violation of USERRA and that Plaintiff is entitled to any

relief in this matter.  CareerBuilder denies any remaining allegations contained in Paragraph 1.

**Plaintiff's employment with Defendant:**

2. Michael R. Camacho began working at CareerBuilder in April 2005 as a Support Technician II in Career Builder's IT Department at CareerBuilder's corporate headquarters in downtown Chicago, Illinois.

   **ANSWER:** CareerBuilder admits the allegations in Paragraph 2.

3, Michael R. Camacho is currently a Staff Sergeant ("SSgt.") in the United States Marine Corps Reserve. At the time of hire by CareerBuilder, he was a Sergeant with nearly 6 years of service as an active and reserve duty marine.

   **ANSWER:** CareerBuilder admits that at the time of hire by CareerBuilder, Plaintiff had

been a Sergeant in the United States Marine Corps. CareerBuilder is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3

and therefore denies those allegations.

4. Soon after SSgt. Camacho began his employment, he notified his supervisor, David Wolfe, that he would be absent for approximately 14 days for military training in May 2005.

   **ANSWER:** CareerBuilder admits the allegations in Paragraph 4.

5. Mr. Wolfe told one of SSgt. Camacho's co-workers that "if [he]'d known [SSgt. Camacho] was in the military, [he] would not have hired him." *See Exhibit A, DOL Letter, October 18, 2007, attached, exhibits omitted.*

   **ANSWER:** CareerBuilder denies the allegations in Paragraph 5.

6. CareerBuilder reduced SSgt. Camacho's job duties and monitored his emails upon his return.

   **ANSWER:** CareerBuilder denies the allegations in Paragraph 6.

7. SSgt. Camacho's co-workers did not have their emails monitored and/or did not have their job duties change without explanation after returning from absences.

   **ANSWER:** CareerBuilder admits that, although it reserves the right to monitor its

employees' email, as a general rule, it does not do so. CareerBuilder further admits that, as a

matter of course, individuals within Plaintiff's IT department did not have their emails monitored after returning from absences. CareerBuilder denies the remaining allegations in Paragraph 7.

8.    In October 2005, SSgt. Camacho received the additional duties of a promotion, but was denied a raise in pay, unlike co-workers who received similar promotions.

**ANSWER:** CareerBuilder admits that Plaintiff did not receive a raise in October 2005 and denies the remaining allegations in Paragraph 8.

9.    Co-workers without military obligations who were promoted received immediate increases in pay commensurate with their promotion.

**ANSWER:** CareerBuilder admits that some promotions result in a raise and some do not result in a raise, including those received by Plaintiff's co-workers, and denies the remaining allegations in Paragraph 9.

10.    CareerBuilder denied SSgt. Camacho the annual raises that his non-military co- workers received.

**ANSWER:** CareerBuilder admits that Plaintiff did not receive an annual raise and denies the remaining allegations in Paragraph 10.

11.    CareerBuilder did not raise SSgt. Camacho's salary until March 2006.

**ANSWER:** CareerBuilder admits that CareerBuilder raised Plaintiff's salary in March 2006 and further states that Plaintiff received his raise when he was promoted to the position of Jr. LAN Administrator in March 2006. CareerBuilder denies any remaining allegations in Paragraph 11.

12.    On several occasions, SSgt. Camacho's supervisor mocked SSgt. Camacho's military service by referring to the Marine Corps as the "Boy Scouts" and to Marine Corps training drills as "camping trips" and made other demeaning remarks about SSgt. Camacho's military service.

**ANSWER:**  CareerBuilder denies the allegations in Paragraph 12.

13.  CareerBuilder monitored all aspects of SSgt. Camacho's work and nit-picked over his work in ways none of his non-military co-workers experienced.

**ANSWER:**  CareerBuilder denies the allegations in Paragraph 13.

14.  SSgt. Camacho never received a written discipline, reprimand or warning throughout his entire employment history with CareerBuilder.

**ANSWER:**  CareerBuilder admits that Plaintiff never received any formal written discipline or warning, though his performance deficiencies were provided to him in writing in the PIP and in the evaluations.  CareerBuilder denies the remaining allegations in Paragraph 14.

15.  SSgt. Camacho worked long hours, rarely missed work for reasons other than military leave, and got along well with his co-workers.

**ANSWER:**  CareerBuilder denies the allegations in Paragraph 15.

16.  At all times relevant to this complaint, CareerBuilder evaluated SSgt. Camacho and his co-workers on a quarterly and annual basis.

**ANSWER:**  CareerBuilder admits the allegations in Paragraph 16.

17.  SSgt. Camacho received evaluation scores that rated him as meeting and/or exceeding expectations, as they were defined by CareerBuilder, for a majority of the performance evaluations conducted by SSgt. Camacho's supervisors over the course of SSgt. Camacho's employment by CareerBuilder.

**ANSWER:**  CareerBuilder admits the allegations in Paragraph 17.

18.  In early July 2006, SSgt. Camacho received an above-average evaluation score for the 2nd Quarter of 2006 from his immediate supervisor, Ron Roden.

**ANSWER:**  CareerBuilder admits that in early July 2006, Plaintiff received an evaluation score from his immediate supervisor, Ron Roden.  CareerBuilder denies that the score was "above-average" and denies the remaining allegations in Paragraph 18.

19.  After receiving this evaluation, SSgt. Camacho told Human Resources ("HR") that based on Mr. Wolfe's words and actions, he was worried that he would be retaliated against for going out on military duty at the end of the month.

**ANSWER:**  CareerBuilder denies the allegations in Paragraph 19.

20.  SSgt. Camacho asked that a paper copy of the 2d Quarter 2006 evaluation be placed in his file, because otherwise, the only record of this evaluation would be in digital form on the CareerBuilder network.

**ANSWER:**  CareerBuilder admits that Plaintiff asked that a paper copy of the 2nd Quarter 2006 evaluation be placed in his file and denies the remaining allegations in Paragraph 20.

21.  Shortly thereafter, SSgt. Camacho told his supervisor that he would be away for military duty at the end of July 2006.

**ANSWER:**  CareerBuilder admits that Plaintiff was away for military duty at the end of July 2006, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies those allegations.

22.  About one week after SSgt. Camacho reported discrimination to HR and notified Mr. Wolfe of upcoming military duty, Mr. Wolfe changed SSgt. Camacho's above-average score on the 2d Quarter 2006 evaluation to a below-average score, without warning, notice or explanation to SSgt. Camacho.

**ANSWER:**  CareerBuilder admits that Plaintiff's 2nd Quarter 2006 evaluation score was changed from a "2" to a "3" and denies the remaining allegations in Paragraph 22.

23.  SSgt. Camacho protested this change when he returned, and CareerBuilder agreed to return the evaluation to its original score.

**ANSWER:** CareerBuilder admits that Plaintiff protested the change and denies the remaining allegations in Paragraph 23.

24.   In September 2006, SSgt. Camacho's department was reorganized, and SSgt. Camacho was given a new title and additional responsibilities, but he was not given a raise.

**ANSWER:** CareerBuilder denies that the reorganization occurred in September 2006 and that Plaintiff was given additional responsibilities, but admits that Plaintiff was not given a raise at that time.

25.   On or about October 20, 2006, SSgt. Camacho notified HR in writing, that he was being unfairly compensated compared to others in his department. He also asked for job descriptions and pay ranges for his and other positions so that he would have more information about his responsibilities.

**ANSWER:** CareerBuilder denies the allegations in Paragraph 25. Further answering, CareerBuilder states that Plaintiff wrote a letter to HR on or about October 20, 2006, alleging that he was not being fairly compensated compared to his counterparts in Atlanta based on the cost of living differences between the two cities and was earning less than the industry standard in Chicago.

26.   On November 10, 2006, SSgt. Camacho was on military duty for the day due to Toys For Tots and the Marine Corps Birthday celebration.

**ANSWER:** CareerBuilder admits that Plaintiff informed HR on November 8, 2006 that he would be attending a Toys for Tots function and the Marine Corps Birthday celebration on November 10, 2006, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies them.

27.   On November 13, 2006, SSgt. Camacho's new supervisor contacted HR to find out how to fire SSgt. Camacho while "mak[ing] sure the business is not impacted" by the termination. *See Exhibit B, attached, without waiving any objections to redactions*

*that were made before document was received by Plaintiff pursuant to a FOIA request to the Department of Labor.*

**ANSWER:**  CareerBuilder denies the allegations in Paragraph 27.

28.  SSgt. Camacho continued to ask for job descriptions in November and December 2006.

**ANSWER:**  CareerBuilder admits the allegations in Paragraph 28.

29.  On or about December 11, 2006, SSgt. Camacho received an above-average annual evaluation score for the period covering January 1, 2006 through December 31, 2006, but he did not receive an annual raise like everyone else in his department.

**ANSWER:**  CareerBuilder denies the allegations in Paragraph 29.  CareerBuilder further

states that on December 7, 2006, Plaintiff received a "2" on his 2006 annual evaluation for the

period covering January 1, 2006 through December 31, 2006 and that, in addition to Plaintiff,

other people in his department did not receive raises.

30.  On or about December 13, 2006 SSgt. Camacho contacted HR about his upcoming military duty and asked that a paper copy of his most recent evaluation be put in his personnel file for safe-keeping.

**ANSWER:**  CareerBuilder admits that on December 13, 2006, Plaintiff contacted HR

and denies the remaining allegations in Paragraph 30.

31.  On or about December 15, 2006 SSgt. Camacho notified his boss that he would be absent for military training January 8-12, 2007.

**ANSWER:**  CareerBuilder admits the allegations in Paragraph 31.

32.  On January 10, 2007, while SSgt Camacho was away for military duty, he received an email from his supervisor asking why a certain project was not being worked on that day.

**ANSWER:** CareerBuilder admits that on January 10, 2007, while Plaintiff was away for military duty, Scott Merrifield sent Plaintiff an email and denies the remaining allegations of Paragraph 32.

33. SSgt. Camacho responded immediately that he was on duty, and he attached a copy of the December 15th email in which he notified his boss of the January drill.

**ANSWER:** CareerBuilder admits that Plaintiff responded that he was out on duty and attached a copy of Plaintiff's December 15 email notifying Merrifield that he would be on military duty and denies the remaining allegations in Paragraph 33.

34. Upon receiving this response, the supervisor again emailed HR for guidance on how to fire SSgt, Camacho without "overstep[ping] any boundaries that could compromise the company." *See Exhibit C, January 10, 2007 email, attached with redactions per amendments to F.R.C.P. 5.2, effective December 1, 2007.*

**ANSWER:** CareerBuilder admits that Merrifield contacted HR and denies the remaining allegations in Paragraph 34.

35. The next day, January 11, 2007, SSgt Camacho notified his supervisor that he would need to report for additional military duty on February 1, 2007.

**ANSWER:** CareerBuilder admits the allegations in Paragraph 35.

36. Later that day, on January 11, 2007, SSgt. Camacho was evaluated again, in absentia, for the 4th Quarter of 2006, (this quarter already been covered by the 2006 annual review, in which he received an above-average score).

**ANSWER:** CareerBuilder denies the allegations in Paragraph 36. CareerBuilder further states that, while Plaintiff was on military leave, Plaintiff's 2006 4th Quarter review was submitted.

37. He received a failing score, for the first time.

**ANSWER:**  CareerBuilder denies the allegation in Paragraph 37.  CareerBuilder further states that Plaintiff received a "5," the lowest score available.

38.  On January 15, 2007, SSgt. Camacho, who did not yet know about failing the latest evaluation, again asked HR for help with his boss because he was "being targeted" due to his military service.  *See Exhibit D, January 15, 2007 email, attached, with redactions per amendments to F.R.C.P. 5.2, effective December 1, 2007.*

**ANSWER:**  CareerBuilder admits that on January 15, 2007, Plaintiff sent HR an email stating he felt he was being targeted due to his military service.  CareerBuilder denies that Plaintiff asked for help with his boss.  CareerBuilder further states that Plaintiff received a "5." CareerBuilder denies any remaining allegations.

39.  That same day, SSgt. Camacho's boss sent out an email to put the termination in motion before SSgt. Camacho returned to the office.  *See Exhibit E, January 15, 2007 email attached, with redactions per amendments to F.R.C.P. 5.2, effective December 1, 2007.*

**ANSWER:**  CareerBuilder admits that Merrifield sent HR an email regarding terminating Plaintiff.  CareerBuilder further states that the email was sent prior to Plaintiff's email to HR of the same date.  CareerBuilder denies the remaining allegations in Paragraph 39.

40.  On January 16, 2007, SSgt. Camacho found out about the failing evaluation score. He immediately emailed HR to find out how he could go from an above-average score to a failing grade in just four weeks, and to restate that he was being discriminated and retaliated against.  *See Exhibit F, January 16, 2007 email, attached.*

**ANSWER:**  CareerBuilder admits that Plaintiff emailed HR on January 16, 2007 and denies the remaining allegations in Paragraph 40.  CareerBuilder is without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff immediately emailed HR and therefore denies the allegation.  CareerBuilder further states that Plaintiff states in Exhibit F that he "noticed today" and questioned his evaluation score and believed it to be because of his military duty absence and retaliation for bringing his problems to HR.

41.  SSgt. Camacho also told HR that he was being "forced out" due to his military service. *See Exhibit F.*

**ANSWER:**  CareerBuilder admits that Plaintiff also told HR that he was being "forced out" and denies the remaining allegations in Paragraph 41.

42.  Meanwhile, SSgt. Camacho's termination was being scripted by his boss.  HR personnel questioned the termination because it "[did]n't sound good" given SSgt. Camacho's recent reports of discrimination. *See Exhibit E; Exhibit G, January 16, 2007 email, attached, with redactions per amendments to F.R.C.P. 5.2, effective December, 2007.*

**ANSWER:**  CareerBuilder denies the allegations in Paragraph 42.

43.  In the afternoon of January 16, 2007, SSgt Camacho forwarded reports from his co-workers to HR, documenting all of the work SSgt. Camacho had done that contradicted his failing evaluation score.

**ANSWER:**  CareerBuilder admits that on January 16, 2007, Plaintiff forwarded to HR emails from his co-workers and denies the remaining allegations in Paragraph 43.

44.  Over the next week, SSgt. Camacho repeatedly asked HR for help with the evaluation problem, and asked his supervisor to justify the failing grade.

**ANSWER:**  CareerBuilder admits that over the next week Plaintiff asked HR and

Merrifield for justification for his review and denies the remaining allegations in Paragraph 44.

45.  On January 22, 2007, SSgt. Camacho met with HR about 2d Quarter 2006 evaluation issues—he had recently found out that the original score had *not* been restored, and that his paper backups had been removed from his personnel file.

**ANSWER:**  CareerBuilder admits that on January 22, 2007, Plaintiff met with HR about

his 2nd Quarter 2006 evaluation score and denies the remaining allegations in Paragraph 45.

46.  On January 23, 2007, SSgt. Camacho asked HR to provide him the results of the investigation into his complaints of military discrimination and retaliation.

**ANSWER:**  CareerBuilder admits the allegations in Paragraph 46.

47.  On or about January 23, 2007, HR demanded SSgt. Camacho provide documents for his previous and upcoming military training, and to have his Battalion Commander call HR to verify the dates before HR would approve SSgt. Camacho's absence for military duty.

**ANSWER:**  CareerBuilder admits that during January 2007 HR requested information

from Plaintiff regarding his previous and upcoming military duty and denies the remaining

allegations in Paragraph 47.

48.  Never before had CareerBuilder asked to speak to any of SSgt. Camacho's command, nor had CareerBuilder ever asked to see any documents before SSgt Camacho returned from duty.

**ANSWER:**  CareerBuilder denies the allegations in Paragraph 48.

49.  Under USERRA, an employer has no authority to deny or grant permission to attend military duty, and an employer cannot require documentation to support an absence for military duty until *after* a service member returns from duty.  *20 C.F.R. Parts 1002.87, 1002.85(c), 1002.121 through 1002.123.*

**ANSWER:**  CareerBuilder denies the allegations in Paragraph 49 as not stating the full

applicable portions of the statute.

50.  Unbeknownst to SSgt. Camacho, these heightened requirements were part of a "great plan" to fire SSgt. Camacho for unapproved leave on January 26, 2007.  *See Exhibit H, Great Plan Email, January 26, 2007, attached, with redactions per amendments to F.R.C.P. 5.2, effective December 1, 2007.*

**ANSWER:**  CareerBuilder denies the allegations in Paragraph 50.

51.  The "great plan [did]n't work[] out" because SSgt. Camacho was able to provide documentation of his orders, therefore, he could not be fired for "unapproved leave."  *See Exhibit H.*

**ANSWER:**  CareerBuilder denies the allegations in Paragraph 51.

52.  Between January 26 and January 31, 2007, SSgt Camacho made additional requests to HR and his supervisor for a written explanation of his failing evaluation and the results of the discrimination investigation he requested.

**ANSWER:**  CareerBuilder denies Plaintiff's characterization that his evaluation was

"failing."  CareerBuilder admits that it was the lowest evaluation score and that Plaintiff made

additional requests to HR.  CareerBuilder denies that there was any evidence of discrimination.

**ANSWER:**

53.  On or about January 26, 2007, two hours after the Great Plan Email notified SSgt. Camacho's boss that SSgt. Camacho could not be fired that day, SSgt. Camacho's boss replied to SSgt. Camacho's request for information by saying that "HR has suggested I not send you my notes."  *See Exhibit I, attached, with redactions per amendments to F.R.C.P. 5.2, effective December 1, 2007.*

**ANSWER:** CareerBuilder admits that on January 26, 2007, Merrifield emailed Plaintiff that "HR has suggested I not send you my notes" and denies the remaining allegations in Paragraph 53.

54. SSgt. Camacho was told on or about January 30, 2007, that he would be put on a Performance Improvement Plan ("PIP")—in essence, probation—when he returned from duty.

**ANSWER:** CareerBuilder admits that Plaintiff was told on or about January 30, 2007, that he would be put on a Performance Improvement Plan and denies the remainder of the allegations in Paragraph 54.

55. SSgt. Camacho filed a complaint with the U.S. Department of Labor on or about January 30, 2007.

**ANSWER:** CareerBuilder admits the allegations in Paragraph 55.

56. After this and just before SSgt. Camacho left for military training on or about February 6, 2007, SSgt. Camacho saw recent emails—including the Great Plan Email of January 26, 2007 and the January 10, 2007 email from his supervisor asking how to fire him without "compromising the company,"—in the course of performing his regular job functions.

**ANSWER:** CareerBuilder admits that Plaintiff left for military training on or about February 6, 2007 and denies the remaining allegations in Paragraph 56.

57. SSgt. Camacho was stunned to see that the decision to fire him had been made months ago, and that the only sticking point was how to do it in a way that appeared legal.

**ANSWER:** CareerBuilder denies the allegations in Paragraph 57.

58. By this time, SSgt. Camacho had already endured nearly two years of vigilance to protect his USERRA rights and his job, verbal insults and mockery of his service from his supervisor, and the fear—every time he left for military duty—that he was not going to have a job, and health insurance for himself and his wife, to come back to.

**ANSWER:** CareerBuilder denies the allegations in Paragraph 58.

59. Throughout his employment, SSgt Camacho suffered stress, anger, anxiety about his future, and significant mental strain as a result of CareerBuilder's actions.

**ANSWER:** CareerBuilder denies the allegations in Paragraph 59.

60. Nonetheless, until he saw the emails, SSgt. Camacho harbored the hope that if he continued to do excellent work, he would still have a job at CareerBuilder.

**ANSWER:** CareerBuilder is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 60 and therefore denies the allegations.

61. SSgt. Camacho went on active duty on February 6, 2007.

**ANSWER:** CareerBuilder admits the allegations in Paragraph 61.

62. At the end of February 2007, the Department of Labor contacted CareerBuilder to investigate SSgt. Camacho's complaint of discrimination and retaliation.

**ANSWER:** CareerBuilder admits that the Department of Labor contacted CareerBuilder on February 26, 2007, to investigate Plaintiff's complaint.

63. At the end of February 2007, CareerBuilder cut off SSgt. Camacho's access to the CareerBuilder network and his CareerBuilder email account.

**ANSWER:** CareerBuilder admits that on February 22, 2007, CareerBuilder suspended Plaintiff's access to the CareerBuilder network and email account and denies the remaining allegations in Paragraph 63.

64. Between February and June 2007, while SSgt. Camacho was on active duty with the Marine Corps, he was in contact with CareerBuilder several times to apprise them of his active duty extensions and to make sure his health insurance was current.

**ANSWER:** CareerBuilder admits the allegations in Paragraph 64.

65.  In July 2007, as SSgt. Camacho was about to return from active duty, he resigned because he could not bear going back to a place: that had a "great plan" to fire him; that was going to monitor his every move like it did no one else; that was going to deny him raises but give him more work; that was going to give him poor evaluations when his work performance was excellent; that will do anything to get rid of him because he serves his country as a United States Marine.

**ANSWER:** CareerBuilder admits that Plaintiff resigned and denies the remaining allegations in Paragraph 65.

66.  A reasonable person in SSgt. Camacho's position would have felt compelled to resign.

**ANSWER:** CareerBuilder denies the allegations in Paragraph 66.

**The Parties:**

67.  Plaintiff, Michael Camacho ("Mr. Camacho"), is a citizen of the United States and at all times relevant to this Complaint, was a resident of Cook County, Illinois, and was employed by Defendant, within the meaning of 38 U.S.C. § 4303(3), at Defendant's offices in Chicago, Illinois.

**ANSWER:** CareerBuilder admits the allegations in Paragraph 67.

68.  Defendant, CareerBuilder, LLC. ("CareerBuilder"), is a corporation conducting business in Cook County, Illinois, and is an employer of Plaintiff within the meaning of 38 U.S.C. § 4303(4)(A).

**ANSWER:** CareerBuilder admits that it is a LLC, does business in Cook County and that it is an employer under the meaning of the Act, but denies the remaining allegations in Paragraph 68.

**Jurisdiction and Venue:**

69.  This court has jurisdiction over Defendant pursuant to 28 U.S.C.S. § 1331 and 38 U.S.C. 4323(b)(3).

**ANSWER:**  CareerBuilder admits the allegations in Paragraph 69.

70.  Venue is proper pursuant to 28 U.S.C.S. §1391(c) and 38 U.S.C. § 4323(c)(2) because the unlawful employment practices alleged herein occurred in Cook County, Illinois, which is within this Court's division of the U.S. District Court, Northern District of Illinois.

**ANSWER:**  CareerBuilder admits that venue is proper and denies the remaining allegations in Paragraph 70.

## COUNT ONE: Violation of USERRA

71.  Plaintiff incorporates and realleges Paragraphs 1 through 66 herein.

**ANSWER:**  CareerBuilder incorporates its answers to Paragraphs 1 through 66 as though set forth herein.

72.  Based upon the foregoing, Defendant CareerBuilder, LLC willfully violated the Uniformed Services Employment and Reemployment Act ("USERRA"), 38 U.S.C. § 4301 *et seq.,* when it compensated SSgt. Camacho less favorably than non-military employees who did not exercise reemployment rights under USERRA.

**ANSWER:**  CareerBuilder denies the allegations in Paragraph 72.

*Wherefore,* Plaintiff Michael R. Camacho prays for the following relief:

a.  That the court order judgment in his favor, and award Defendant to pay backpay and reimburse Plaintiff for all other benefits that Plaintiff would have received but for Defendant's conduct; and, order Defendant pay Plaintiff frontpay in an amount to compensate Plaintiff for earnings he would have received but for Defendant's conduct; and,

b.  That the court order Defendant pay liquidated damages; and,

c.  That the court order Defendant reimburse Plaintiff for all employment benefits, including retirement benefit contributions and stock options, that Plaintiff would have received but for Defendant's conduct; and,

d.  That the court order Defendant pay all reasonable costs and attorney's fees incurred by Plaintiff as a result of Defendant's actions; and,

    e.    That the court award prejudgment interest on any and all damages to which the Court finds Plaintiff is entitled; and,

    f.    That the court award Plaintiff any other relief that the court deems just.

**ANSWER:**  CareerBuilder denies the allegations in the above Prayer for Relief and states that Plaintiff is not entitled to judgment or any of the relief requested.

## COUNT TWO: Violation of USERRA for SSgt. Camacho's constructive discharge

73.  Plaintiff incorporates and realleges Paragraphs 1 through 66 herein.

**ANSWER:**  CareerBuilder incorporates its answers to Paragraphs 1 through 66 as though set forth herein.

74.  Based upon the foregoing, Defendant CareerBuilder, LLC willfully violated the Uniformed Services Employment and Reemployment Act ("USERRA"), 38 U.S.C. § 4301 *et seq.,* when it conspired to terminate SSgt. Camacho's employment, and then constructively discharged SSgt. Camacho, because he was a member of the United States Marine Corps Reserve.

**ANSWER:**  CareerBuilder denies the allegations in Paragraph 74.

*Wherefore,* Plaintiff Michael R. Camacho prays for the following relief:

    a.    That the court order judgment in his favor, and order Defendant to pay backpay and reimburse Plaintiff for all other benefits that Plaintiff would have received but for Defendant's conduct; order Defendant pay Plaintiff frontpay in an amount to compensate Plaintiff for earnings he would have received but for Defendant's conduct; and,

    b.    That the court order Defendant pay liquidated damages; and,

    c.    That the court order Defendant reimburse Plaintiff for all employment benefits, including retirement benefit contributions and stock options, that Plaintiff would have received but for Defendant's conduct; and,

    d.    That the court order Defendant pay all reasonable costs and attorney's fees incurred by Plaintiff as a result of Defendant's actions; and,

    e.    That the court award prejudgment interest on any and all damages to which the Court finds Plaintiff is entitled; and,

    f.    That the court award Plaintiff any other relief that the court deems just.

**ANSWER:** CareerBuilder denies the allegations in the above Prayer for Relief and states that Plaintiff is not entitled to judgment or any of the relief requested.

## COUNT THREE: Violation of USERRA for retaliation

75.  Plaintiff incorporates and realleges Paragraphs 1 through 66 herein.

**ANSWER:** CareerBuilder incorporates its answers to Paragraphs 1 through 66 as though set forth herein.

76.  Based upon the foregoing, Defendant CareerBuilder, LLC willfully violated the Uniformed Services Employment and Reemployment Act ("USERRA"), 38 U.S.C. § 4301 *et seq,,* when it retaliated against SSgt. Camacho for reporting discriminatory actions committed against him to Defendant's human resources personnel and the appropriate government agencies.

**ANSWER:** CareerBuilder denies the allegations in Paragraph 76.

*Wherefore,* Plaintiff Michael R. Camacho prays for the following relief:

    a.    That the court order judgment in his favor, and order Defendant to pay backpay and reimburse Plaintiff for all other benefits that Plaintiff would have received but for Defendant's conduct; order Defendant pay Plaintiff frontpay in an amount to compensate Plaintiff for earnings he would have received but for Defendant's conduct; and,

    b.    That the court order Defendant pay liquidated damages; and,

    c.    That the court order Defendant reimburse Plaintiff for all employment benefits, including retirement benefit contributions and stock options, that Plaintiff would have received but for Defendant's conduct; and,

    d.    That the court order Defendant pay all reasonable costs and attorney's fees incurred by Plaintiff as a result of Defendant's actions; and,

    e.    That the court award prejudgment interest on any and all damages to which the Court finds Plaintiff is entitled; and,

    f.    That the court award Plaintiff any other relief that the court deems just.

**ANSWER:**  CareerBuilder denies the allegations in the above Prayer for Relief and states that Plaintiff is not entitled to judgment or any of the relief requested.

### AFFIRMATIVE DEFENSES

1.      The Complaint fails to state a claim upon which relief may be granted.

2.      Any claims raised in the Complaint are barred to the extent they rely upon or relate to events that took place outside the applicable statute of limitations.

3.      Any claims raised in the Complaint are barred in whole or in part by the doctrine of unclean hands and/or the doctrine of estoppel based upon Plaintiff's misconduct before filing suit.

4.      All actions taken with regard to Plaintiff were taken for legitimate, lawful, and nondiscriminatory business reasons.

5.      To the extent Plaintiff is entitled to damages, he failed to mitigate his damages.

6.      Plaintiff's claim for liquidated damages is barred on the grounds that CareerBuilder's actions were not undertaken in willful violation of the federally protected rights of Plaintiff.

7.      Plaintiff's claim for liquidated damages is barred on the grounds that CareerBuilder at all times acted in good faith and with the honest belief that its conduct was in compliance with 38 U.S.C. § 4301 et seq. and all other applicable law.

8.      To the extent Plaintiff seeks to make a wage or salary complaint or comparison with other CareerBuilder employees, USERRA explicitly excludes such claims.

9.      To the extent Plaintiff seeks relief outside the express provisions of USERRA, that relief is precluded by law.

Dated:  March 31, 2008                    Respectfully submitted,


                                          s/Shelley R. Hebert
                                          _____
                                          Michael J. Gray (IL Bar # 06210880)
                                          mjgray@jonesday.com
                                          Shelley R. Hebert (IL Bar # 6280805)
                                          shebert@jonesday.com
                                          JONES DAY
                                          77 West Wacker
                                          Chicago, IL  60601-1692
                                          Telephone:  (312) 782-3939
                                          Facsimile:  (312) 782-8585


                                          Attorneys for Defendant
                                          CAREERBUILDER, LLC

<u>**CERTIFICATE OF SERVICE**</u>

I, Shelley R. Hebert, certify that on the 31st day of March 2008, I electronically filed the

foregoing document.  Notice of this filing will be sent to the following parties by operation of the

Court's electronic filing system.  Parties may access the filing through the Court's system.

Lisa M. Stauff
Law Offices of Lisa M. Stauff
53 W. Jackson Blvd.
Suite 660
Chicago, IL 60604
(312) 212-1036
lstauff@staufflaw.com

s/Shelley R. Hebert _____
One of the Attorneys for Defendant
CareerBuilder, LLC